LEWIS E. PAYSON

*v.*

THE PEOPLE *ex rel.* J. B. Parsons, County Treasurer.

*Opinion filed October 24, 1898.*

1. DRAINAGE—*no presumption arises to aid jurisdiction of court in establishing a drainage district.* The county court, in establishing a drainage district, derives its jurisdiction solely from the statute, and every essential fact necessary to such jurisdiction must affirmatively appear of record, as nothing will be presumed to support it.

2. SAME—*statute must be strictly followed to obtain service by publication.* In order to sustain the county court's jurisdiction, by publication, in a proceeding to establish a drainage district, it must affirmatively appear that the statute has been strictly pursued and its requirements fully complied with.

3. SAME—*judgment confirming drainage assessment may be collaterally attacked, in absence of jurisdictional facts.* A land owner not named as a party to proceedings to organize a drainage district and levy an assessment for its improvement, who does not appear and upon whom no notice is served or attempted to be served, is not concluded by the judgment of confirmation, and he may raise the question of want of jurisdiction upon application for judgment of sale.

4. SAME—*when court's finding of jurisdictional facts is not conclusive.* The court's finding of jurisdictional facts in a proceeding to levy an assessment for drainage improvement is not conclusive in a collateral proceeding, where the record itself shows that evidence of jurisdiction upon which the court acted is insufficient.

5. SAME—*what is not a sufficient finding to authorize appointment of drainage commissioners.* To authorize the appointment of drainage commissioners the court must, under section 5 of the Drainage act, (Laws of 1885, p. 112,) judicially find and enter of record certain facts relating to the signing of the petition and the usefulness of

the improvement, and an order finding merely that the petitioners had made "proof of the day of publication, posting and mailing of notices" is not sufficient.

6. SAME—*in drainage assessments the benefits cannot be set off against damages for land taken.* Corporations organized for drainage purposes are public corporations, and cannot take private property for the purpose of constructing a drainage ditch without making compensation to the owner other than in the form of benefits.

APPEAL from the County Court of Livingston county; the Hon. C. M. BARRICKMAN, Judge, presiding.

N. J. PILLSBURY, for appellant.

A. C. NORTON, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Notice of application for judgment against delinquent lands and town lots in Livingston county was duly published by appellee, the county collector, and appellant appeared and filed his objections to entering judgment against the east half of the south-west quarter of section 32, township 26, range 8, east of the third principal meridian. It appears that a special assessment was levied on the above described tract of land by the Oliver and Corn Grove drainage district, amounting to $280, and judgment was sought for that amount, with $17.27 interest and seventy-one cents costs, aggregating $297.98.

An attempt was made to organize a drainage district through lands in the petition described, which petition prayed for the construction of a continuous ditch through lands included within said district. This ditch crossed the land of appellant a distance of about one hundred and eighty rods, taking for the purposes of the ditch about four and one-half or five acres of land belonging to appellant. Appellant's agent made a contract for the sale of this land, subject to the approval of appellant. The agent's authority only extended to making provi-

sional contracts, to be passed upon by his principal. The
contract of sale of this land was repudiated by appel-
lant, and the proposed purchaser was notified of that fact
within two or three weeks of the date of the contract.
That was in June, 1895. Subsequently it was proposed
to organize this drainage district, and one of the land
owners who was active in the preliminary steps for the
formation of the district, and who made the affidavit re-
quired by the statute, giving the names of non-resident
land owners in the proposed district, was notified of the
ownership of this land by the appellant, who was well
known by him to be a resident of the city of Washington,
D. C., and yet no notice of the proceedings for the organi-
zation of the district was ever given or attempted to be
given to appellant.

On the levy of the special assessment to pay for this
ditch so constructed through appellant's land, the publi-
cation of notice that this assessment was delinquent was
made; and also notice of sale. Appellant's objections
set up the fact of his ownership, and knowledge thereof
by the petitioners; the absence of notice to him, as re-
quired by the statute; that no notice was given him, or
attempted to be given, of the appointment of commis-
sioners to assess benefits, nor when they would apply to
the court for the confirmation of their report; that there
was no finding by the court of jurisdictional facts nec-
essary to be found before it was authorized to appoint
commissioners, and that no damages were allowed or
compensation made for lands actually taken for the ditch.
These objections were overruled, and judgment was en-
tered against the land for the amount of the special as-
sessment, interest and costs, and appellant prosecutes
this appeal.

The county court, in establishing drainage districts,
derives its jurisdiction from the statute alone, and no
presumption arises to support its action in any given
particular. Every essential fact necessary to such juris-

diction must appear affirmatively of record, as nothing shall be intended or presumed to be within the jurisdiction. (*Haywood* v. *Collins*, 60 Ill. 328; *Firebaugh* v. *Hall*, 63 id. 81; *Chicago and Northwestern Railway Co.* v. *Galt*, 133 id. 657.) In *People* v. *Seelye*, 146 Ill. 189, it was said (p. 221): "If it (the court) has proceeded without jurisdiction, it is equally unimportant how technically correct and precisely certain in point of form the record may appear. Its judgment is void to every intent and for every purpose, and it must be so declared in every court in which it is presented." See, also, *Sheldon* v. *Newton*, 3 Ohio St. 494; 12 Am. & Eng. Ency. of Law, 311; *Hernandez* v. *Drake*, 81 Ill. 34; *Munroe* v. *People*, 102 id. 406.

To obtain jurisdiction by means of publication it must affirmatively appear that the statute has been strictly pursued and its provisions complied with. In *McChesney* v. *People*, 145 Ill. 614, the application was for judgment for a delinquent special assessment for local improvements, and it was held that the court had no jurisdiction to confirm the assessment because the proof of the mailing, posting and publication of the notices required by the statute was not made.

The case of *McChesney* v. *People*, 148 Ill. 221, was an application by the county collector of Cook county for a judgment against the lands for a collection of taxes and special assessment. The appellants appeared in the county court and objected to the rendition of judgment on the ground that the court had no jurisdiction to render judgment of confirmation for the want of proper notice. On this application for judgment they were allowed to show that the notices appearing in the record were not legal because two of the commissioners and a stranger had signed the notices, and not the three commissioners jointly. Section 27 of the act under which the assessment was made in that case required the commissioners to give notice of such assessment and the term of court at which a hearing would be had. The court said (p. 225):

"It is a general rule, and one well understood, that in a proceeding for the collection of taxes, where the owner may be deprived of his property, the requirements of the statute must be strictly followed. * * * The object of this requirement is to afford the owner whose land has been assessed an opportunity to appear and contest the validity and the justness of the assessment, and unless the notice required by the statute has been given, the court in which the assessment roll has been filed has no jurisdiction to confirm the assessment. The land owner, when notified by the commissioners as provided by the statute, is bound to appear and make his defense, and if he fails, the judgment of confirmation will be conclusive on him, but he is under no obligation to pay any attention to a notice given by persons other than the commissioners who have been appointed to make the assessment."

In *Schertz* v. *People*, 105 Ill. 27, it was held that, on an application for judgment for a delinquent special assessment, the record of the entire proceedings, including the judgment of confirmation, was before the court, and if it appeared that those proceedings were so defective as not to authorize the court to act, then the objections could be made as well on application for judgment as at any other time, on the ground that when the court acts without jurisdiction its judgments and orders are void and can be attacked at any time before any court. To the same effect are *Fortman* v. *Ruggles*, 58 Ill. 207, and *Senichka* v. *Lowe*, 74 id. 274.

It is insisted that if appellant has any remedy against the collection of this assessment he is not now in the proper forum, as this is a collateral proceeding. The appellant not being named as a party to the proceedings, and receiving no notice thereof from the commencement thereof until after the assessment was made and filed in the county court, is not concluded by the judgment of confirmation or any order of the court in reference to said drainage district. (*Robeson* v. *People*, 43 N. E. Rep. 619;

*Murphy* v. *People,* 120 Ill. 234; *Clark* v. *People,* 146 id. 348; *Chicago and Northwestern Railway Co.* v. *Galt,* 133 id. 657; *Calumet River Railway Co.* v. *Brown,* 136 id. 322.) In this last case it was held essential to the jurisdiction of the court to enter judgment of confirmation that it obtained jurisdiction of the person of the land owner by proper notice, otherwise, if he did not appear the judgment of confirmation would not be binding upon him, and he could show the want of jurisdiction upon the application for judgment.    To the same effect are the other cases cited.

There being no presumption of jurisdiction, in the county court, of appellant, he not being named as a party or land owner, and it being shown by negation that he received no notice of the proceedings and that none was attempted to be given, and the assessment depending upon the legality of the organization, no finding of the court of the existence of jurisdiction would be obligatory. It has never been held, where the record itself showed the evidence of jurisdiction upon which the court acted was insufficient, that the finding of the court in favor of its jurisdiction was conclusive. (*Goudy* v. *Hall,* 30 Ill. 109; *Fox* v. *Turtle,* 55 id. 377; *Fortman* v. *Ruggles, supra.*)    The drainage district seeking to levy a tax on appellant's land, and deriving its power to do so from a proceeding to include such land within the drainage district by means of the statute, and the statute requiring notice to be given appellant, and there being no presumption that notice was given, appellant may contest the question as to whether the court had jurisdiction over him to include his lands within the limits of the district and make it liable for this special assessment.    *Schertz* v. *People, supra; Kilmer* v. *People,* 106 Ill. 529; *Cass* v. *People,* 46 N. E. Rep. 729.

It is insisted by appellee that this is a collateral proceeding, and appellant cannot contest the validity of the judgment confirming the assessment except in a direct proceeding in the nature of *quo warranto,* and *Osborn* v. *People,* 103 Ill. 224, *Blake* v. *People,* 109 id. 504, *Keigwin* v.

*Drainage Comrs.* 115 id. 347, *Evans* v. *Lewis*, 121 id. 478, *Bodman* v. *Drainage District*, 132 id. 439, and *People* v. *Jones*, 137 id. 35, are cited as sustaining this contention. That the existence of a *de facto* corporation and the authority of its acting officers can only be questioned by a proceeding by *quo warranto*, and that all objections which could have been urged at the time of the confirmation of the assessment roll and which were not then urged must be considered as waived, and cannot be urged for the first time on application for sale of lands for a delinquent assessment, as held in *Blake* v. *People, supra,* is a well recognized principle. One who is not served with notice in any manner, and who does not enter his appearance and on whom there is no attempt at service, cannot be held to have waived any right. All the cases above cited as sustaining appellee's contention are distinguishable from this case. The statute required that notice should be given the plaintiff before a right existed to levy the special assessment against his land. Only after due notice to him, as required by the statute, can his land be brought into the district and made subject to the special assessment. To hold that a land owner may be subjected to such an assessment without any notice given or attempted, and without an appearance, would be against every principle of justice and right. The right to levy a tax by which one may be deprived of his property exists by virtue of the statute alone, which must be strictly followed. Appellant's denial of the right to levy this tax is not a denial of the existence of a *de facto* corporation, but is a denial of the right to subject his land to the payment of any tax levied as a special assessment without notice to him, as the land owner, of the organization of the district, and hence is an attack on the jurisdiction of the court to confirm the assessment, and not a denial of the existence of the corporation.

Section 3 of the Drainage act requires that when a petition to organize a drainage district is filed, the clerk

175—18

of the county court shall cause three weeks' notice of the presentation and filing of such petition to be given by publication, and by posting notices thereof at the door of the court house of the county, and in at least ten of the most public places within such proposed district; that if any of the land owners of the district are non-residents of the county or counties in which the proposed district shall lie, the petition shall be accompanied by an affidavit giving the names and places of residence of such non-residents, if known, and if unknown, stating that upon diligent inquiry their places of residence cannot be ascertained; and that the clerk shall send a copy of the notice aforesaid to each of the said non-residents within three days after the first publication of same. This provision of the statute should be followed in good faith, to the end that the non-resident land owners may have notice of the proceedings instituted against them. In the case at bar the petitioners knew appellant was interested in the land, for they were so notified. They knew he owned the land, and were told he still owned it by his tenant in possession. They knew his residence, but in the affidavit attached to the petition, for some reason unknown, they neglected or refused to insert his name as owner, and hence he had no notice as a matter of course, and not being named as a party, nor as interested, has a right to question every act taken against his interest. The certificate of the clerk as to mailing notices shows he only sent notices to those whose names were in the affidavit attached to the petition, and this excludes the idea that notice was sent to appellant.

We hold that under the statute, and under the facts as they appear in this record, the court had no jurisdiction of the person of appellant, and he has a right in this proceeding to contest the fact of jurisdiction of the court in including his lands within the district.

Section 5 of the Drainage act requires that on the hearing of any petition the contestants and petitioners

may offer any competent evidence in regard thereto, and it shall be the duty of the court to hear and determine whether or not the said petition contains the signatures of the majority of the owners of lands within the said proposed district who are of lawful age and who represent one-third in area of the lands proposed to be included in the district. The statute, after stating what may be *prima facie* evidence of such fact, provides: "If the court, after hearing any and all competent evidence that may be offered before it for and against the said petition, shall find the same has not been signed by a majority of the land owners, as hereinbefore required, the said petition shall be dismissed at the cost of the petitioners; but if the court shall find that the petition has been signed by land owners constituting such majorities the court shall so find, and such finding shall be conclusive upon the land owners of such district that they have assented to and accepted the provisions of this act; and if it shall further appear to the court that the proposed drain or drains, ditch or ditches, levee or other works, is or are necessary or will be useful for the drainage of the lands proposed to be drained thereby, for agricultural, sanitary or mining purposes, the court shall so find, and appoint three competent persons as commissioners. * * * If the court shall find against the petitioners, the petition shall be dismissed at the cost of the petitioners." Hurd's Stat. 1889, p. 540.

The facts that must thus appear must be judicially found and entered of record. The right to appoint commissioners is dependent on the facts so found and entered of record. When these facts are judicially found to exist, then, and not until then, is the court authorized to appoint commissioners. (*Commissioners of Drainage District v. Griffin*, 134 Ill. 330.) The order and judgment of the court did not find these jurisdictional facts, the same being as follows: "And now on this day come the said petitioners and make proof of the day of publication,

posting and mailing of notices, as required by law. It is therefore considered and ordered by the court that Michael Truhill, W. P. Goemble and S. S. Hitch be and they are hereby appointed commissioners for said drainage district." This was not a sufficient finding to authorize the appointment of commissioners.

No notice was given appellant of the confirmation of the report of the commissioners. After the filing of the commissioners' report a jury was ordered to be impaneled to assess damage and benefits, and no compensation was allowed appellant for land actually taken for the ditch. The contention of appellee is, that in drainage assessments benefits may be set off against damages for land taken, and that a different rule exists with reference to drainage districts than with reference to condemnation proceedings in which private property is sought to be taken for public highways or railroads. That contention cannot be sustained. In *Chronic* v. *Pugh*, 136 Ill. 539, it was said (p. 548): "If the construction of the statute in question adopted at the trial below were the only one of which it is susceptible we might feel compelled to declare the statute unconstitutional, in that it provides for taking and appropriating private property by proceedings *in invitum* without making just compensation. Section 13 of article 2 of the constitution prohibits the taking or damaging of private property for public use without just compensation, and under this and similar provisions of State constitutions it has been uniformly held, in this and other States, that the power to authorize the taking of private property for private use, either with or without compensation, is impliedly prohibited. (*Nesbitt* v. *Trumbo*, 39 Ill. 110; Lewis on Eminent Domain, sec. 157, and authorities cited in note.) It is true the section of the constitution in relation to drainage authorizes the passage of laws permitting the owners of land to construct drains for agricultural, sanitary or mining purposes across the lands of others, and is silent on the

subject of compensation to the owners of the lands over which such drains are constructed; but we are not inclined to adopt the view that the framers of the constitution intended to authorize the taking of private property, even for the purpose of drainage, without making just compensation. If the construction of drains for the purposes mentioned is to be regarded as a public purpose, then the taking of private property for that purpose comes directly within the prohibition of section 13, article 2. If, on the other hand, it is to be treated as a taking of private property for a mere private purpose, we are inclined to the view that, by analogy, it must be held to come under the same rule, so far as the duty to make compensation is concerned. If the taking of private property for public use and to subserve the public welfare can be authorized only upon making just compensation, we will not readily attribute to the framers of the constitution an intention to authorize the taking of private property for private use by proceedings *in invitum*, without making compensation to at least an equal extent."

The above was a case where land was sought to be taken through which to construct a ditch to drain an adjoining tract. Corporations existing for drainage purposes are public corporations, and where land is sought to be taken for the purpose of a ditch it is for a public purpose, and compensation must be made before land of an individual can be taken for such public use. *Elmore* v. *Drainage Comrs.* 135 Ill. 269; *Chicago and Northwestern Railway Co.* v. *Galt, supra; Chaplin* v. *Highway Comrs.* 129 Ill. 651.

The county court of Livingston county erred in overruling appellant's objections, and its judgment is reversed and the cause is remanded.

*Reversed and remanded.*